UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHRISTOPHER J. NICHOLS,       )
                              )
                Plaintiff,    )     Case No. 1:12-cv-995
                              )
v.                            )     Honorable Janet T. Neff
                              )
COMMISSIONER OF               )
SOCIAL SECURITY,              )
                              )     **REPORT AND RECOMMENDATION**
                Defendant.    )
_____)

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On January 16, 2009, plaintiff filed his application for benefits alleging a January 15, 2008 onset of disability. (A.R. 149-50, 174-75). He later amended his claim to allege a January 1, 2009 onset of disability. (A.R. 175). His claim was denied on initial review. On February 24, 2011, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 33-73). On March 25, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-27). On July 18, 2012, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. He asks the court to overturn the Commissioner's decision on the following grounds:

I.     The ALJ committed reversible error by not properly considering the opinions of Plaintiff's treating physicians and counselor; and

II.    The ALJ committed reversible error by failing to follow the vocational expert's answers to accurate hypothetical questions.

(Statement of Errors, Plf. Brief at 17, docket # 15).  I recommend that the Commissioner's decision be affirmed.


### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court

interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on January 1, 2009, through the date of the ALJ's decision. (A.R. 17). Plaintiff had not engaged in substantial gainful activity on or after January 1, 2009. (A.R. 17). Plaintiff had the following severe impairments: "affective disorders, and status post bilateral shoulder surgeries." (A.R. 17). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 18). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non exertional limitations: only simple tasks and only frequent overhead reaching.

-3-

(A.R. 20).  The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible:

> Claimant testified that he was married and expecting his first child.  He testified that he attended church and [B]ible study, and had attended a one week mission in Guatemala.  He testified that he built homes and worked in a medical clinic while on his mission trip, and the trip did not result in any anxiety episodes.  He testified he could not go back to work because of his paranoid delusions he had about his coworkers.  He testified he was hospitalized once in 2009 and once in 2010.  He testified that he isolated himself and only went out for doctor appointments and [B]ible study.
>
> Claimant's testimony has limited credibility.  In November 2008, just prior to his application for benefits, he checked himself into inpatient treatment and was overheard wishing for a disability diagnosis (Exhibit 4F at 5).  Further, there are limited records indicating claimant is homicidal (Exhibits 17F, 23F, and 27F).  Furthermore, claimant attends church and [B]ible study, he took a mission trip, he has a wife and is starting a family, and his wife reports he is able to spend time with others and go shopping.  Thus, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> * * *
>
> In terms of the claimant's affective disorders, the overall records indicate limited problems.  Claimant did not report significant psychiatric issues to his primary care physician in April 2009 (Exhibit 23F at 2).  In May 2009, his treating psychologist indicated he was doing [well] and had no mood problems (Exhibit 8F at 7).  At his consultative examination in May 2009 with Dr. Bechard, he was somewhat anxious and depressed, but reported that he would rather not work, especially if he has children because he would like to stay home with them (Exhibit 9F).  Although claimant had a brief inpatient hospitalization in August 2009, upon discharge, he was clean and cooperative, and his affect was reactive with normal speech, and no delusions or hallucinations (Exhibit 14F at 1).  Furthermore, his mood was only mildly anxious (Exhibit 14F at 1).  He was diagnosed with a major depressive disorder, recurrent and given a Global Assessment of Functioning (GAF) score of 55.  A GAF score of 55 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning.
>
> * * *

Therefore, the objective record does not support the limitation claimant alleges. Claimant was doing well in April and May 2009 (Exhibits 23F at 2 and 8F at 7). In May 2009, he reported that he would rather not work and wanted to stay home if he had children (Exhibit 9F). Although he had a brief inpatient admission in August 2009, he was discharged with a GAF score of 55, indicating only moderate limitations (Exhibit 14F at 2). Moreover, in November 2009 his GAF was up to 60 (Exhibit 17F at 1-3). Furthermore, in March 2010 claimant was able to take a trip to Guatemala, and in January 2010, March 2010, May 2010, and August 2010 claimant was noted as euthymic (Exhibits 17F at 5 and 4, and 27F at 7-6 and 4). In addition, claimant was noted stable in November 2010 and January 2011 (Exhibits 27F at 3 and 2). Consequently, the above limitation for simple work would fully accommodate his affective disorders.

\* \* \*

Furthermore, although he reported reduced activities of daily living in his Function Reports, his wife reported he was able to cook, clean, do laundry and household repairs, iron, drive, shop, watch television, hunt and fish.

(A.R. 21-25). The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis[1] because he was capable of performing his past relevant work as a cashier, car wash attendant, cleaner, injection molding machine operator, and laborer. (A.R. 25).

Alternatively, the ALJ found that plaintiff was not disabled at step 5 of the sequential analysis. Plaintiff was 29-years-old as of his alleged onset of disability. Thus, at all times relevant to his claim for DIB benefits he was classified as a younger individual. (A.R. 26). Plaintiff has at

---

[1] "Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

least a high school education and is able to communicate in English. (A.R. 26). The ALJ found that the transferability of job skills was not material to a disability determination. (A.R. 26). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 70,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 66-69). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled. (A.R. 26-27).

## 1.

Plaintiff's arguments are based on evidence that he never presented to the ALJ, principally consisting of a subsequent award of DIB benefits for a later period. (Plf. Brief at 13, 17, 18, Ex. A; Reply Brief at 4). This is patently improper. It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence

supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand to the Commissioner "pursuant to either Sentence Four or Sentence Six of 42 U.S.C. Section 405(g) . . . ." (Plf. Brief at 21). Plaintiff's reply brief concludes with an identical request. (Reply Brief at 5). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357. Plaintiff "develops no argument to support a remand, and thus the request is waived." *Curler v. Commissioner*, No. 13-1721, 2014 WL 1282521, at * 10 (6th Cir. Apr. 1, 2014).

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d

-7-

at 483; *see Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010).  Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486.  I recommend that plaintiff's request for a sentence six remand be denied because he has not addressed, much less carried, his statutory burden.  *See Curler v. Commissioner*, 2014 WL 1282521, at * 10.

In *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009), the Sixth Circuit held that a subsequent administrative decision awarding benefits does not satisfy the plaintiff's burden under sentence six:  "[A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)."  561 F.3d at 653.  "Under sentence six, the mere existence of a subsequent decision in [plaintiff's] favor, standing alone, cannot be evidence that can change the outcome of his prior proceeding.  A subsequent favorable decision may be *supported* by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence."  561 F.3d at 653.  The Sixth Circuit explained that consideration of the result achieved on a subsequent application for benefits as "new evidence" under sentence six would be inconsistent with the statutory purpose of a sentence-six remand and would be contrary to controlling Supreme Court precedent:

> If a subsequent favorable decision -- separated from any new substantive evidence supporting the decision -- could itself be "new evidence" under sentence six, the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence.  But remand under sentence six is not meant to address the "correctness of the administrative determination" made on the evidence already before the initial ALJ.  [*Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)].  In addition, it is overly broad to read the words 'new evidence' in sentence six to include a subsequent decision based on the same evidence.  In *Melkonyan*, the Court noted that the legislative history of § 405(g) shows that "Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases.'" *Id.* at 100.

561 F.3d at 653.  The mere fact of a subsequent favorable decision cannot be deemed "new evidence" under these authorities.  The only legitimate effect of the subsequent proceedings would arise from evidence considered in those proceedings that bears on plaintiff's condition on or before March 25, 2011.  Plaintiff did not submit any new medical evidence in support of his perfunctory request for a sentence-six remand.  The subsequent decision awarding DIB benefits for a different time period (docket # 15-1) does not provide a basis for remanding this case to the Commissioner under sentence six of 42 U.S.C. § 405(g).

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.  I recommend that plaintiff's request for a sentence six remand be denied.  Plaintiff's arguments must be evaluated on the record presented to the ALJ.

## 2.

Plaintiff argues that the ALJ "committed reversible error by not properly considering the opinion of Plaintiff's treating physicians and counselor."  (Plf. Brief at 17).  Under this heading, plaintiff devotes the vast majority of his arguments attacking the honesty and integrity of the ALJ.  He accuses the ALJ of "incompetence and/or frankly complete dishonesty" (*Id.*), asks that the ALJ "be disqualified because of his conduct" (*Id.*), states that "no treating physician is telling the truth, at least according to the ALJ's opinion" (*Id.*), characterizes the ALJ's decision as "ridiculous" (*Id.* at 18), and accuses the ALJ of "ignoring" or "distorting" the "overwhelming testimony of treaters in this case." (*Id.*).  Plaintiff's reply brief follows in the same vein:

> In its [sic] Brief, the Defendant argues that the Plaintiff has not met his [burden in] his argument that the ALJ showed bias (Defendant's Brief at 5).  While Plaintiff's initial Brief did not explicitly argue the issue of bias, perhaps the Defendant has done all of us a favor by raising this issue.  Certainly, there would appear to be no question that the quality of this

ALJ's decisions is extraordinarily low.  Frankly, this Court could probably infer bias just by the volume of cases filed in the Western District of Michigan which involve this particular ALJ.  When, if ever, has this Court seen a judge in which [sic] at least 17 practitioners affix their names to a petition complaining of bias?  This ALJ has, over the course of his ignoble term of office in the Grand Rapids Hearings Office, continued to either ignore or manipulate all of the evidence in front of him.  No treating physician is ever right, and every non-examining physician is [n]ever wrong in his universe, contrary to the vast body of law which exists in this area.  And this case repeats the same themes. . . .  So, now that Defendant has raised the issue, can Plaintiff demonstrate that the ALJ is biased?  He is certainly [] biased in the same sense that he cannot or will not evaluate evidence correctly, that he refuses to follow applicable case law and that, like the late Vincent Lombardi, he treats everybody equally – "like dogs."  Defendant certainly has had ample notice of this problem for some time yet refuses to deal with it, so perhaps this Court could do so.

* * *

This Court has seen a flood of cases due to the outright incompetence, malfeasance, and bias of this ALJ, and Defendant refuses to do anything about it.  Claimants have literally died waiting for justice, just as the late Russell Rondeau died waiting for this ALJ to be corrected.  The evidence in this case is so overwhelming that this case should be remanded immediately for payment of benefits.  If it is remanded to the same Judge, he will engage in the same tactics to once again deny a deserving person of benefits, and thus, if a remand is ordered, it should be routed to a new ALJ.

(Reply Brief at 1-5).

A.    ALJ Bias

Plaintiff is absolutely correct that he did not "explicitly argue" the issue of bias in his initial brief.  (Reply Brief at 1).  It is not listed anywhere in his statement of errors.  This should end the court's analysis, because issues not presented in the plaintiff's statement of errors are considered waived. *See Ealy v. Commissioner*, 594 F.3d 504, 513 (6th Cir. 2010); *York v. Astrue*, No. 3:12-cv-188, 2013 WL 796288, at * 5 (S.D. Ohio  Mar. 4, 2013); *Oudsema v. Commissioner*, No. 1:11-cv-1264, 2013 WL 588925, at * 5 (W.D. Mich. Feb. 13, 2013).

Even assuming the issue had not been waived, it is meritless.  The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of

-10-

overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)); *see Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011) ("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially."). Plaintiff has the burden of providing "convincing evidence that a risk of actual bias or prejudgment is present." *See Bailey*, 413 F. App'x at 856; *see Collier*, 108 F. App'x at 364. For the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias."). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). Plaintiff's general dissatisfaction with this ALJ's decisions in other cases is not before the court. The only decision currently subject to judicial review is the ALJ's decision dated March 25, 2011. (A.R. 15-27). The hearing transcript (A.R. 33-73) and the ALJ's decision (A.R. 15-27) in the case under review reveal no evidence of bias.

B.      Treating Physician Rule

        Plaintiff argues that the ALJ committed reversible error by rejecting various opinions

expressed by Brooke Mol, a social worker, consultative examiners Psychologists Dennis Mulder and

Joseph Bechard, M.D., and John Mitchell, M.D., a treating psychiatrist.  (Plf. Brief at 17-20).  The

issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved

to the Commissioner.  20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390

(6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special

significance.  *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir.

2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of

disability [is] the prerogative of the Commissioner, not the treating physician.").  Likewise, "no

special significance"[2] is attached to treating physician opinions regarding the credibility of the

plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the

requirements of a listed impairment because they are administrative issues reserved to the

Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th

Cir. 2009).

        Generally, the medical opinions of treating physicians are given substantial, if not

controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he

opinion of a treating physician does not receive controlling weight merely by virtue of the fact that

it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported

by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . .

---

[2]"We will not give any special significance to the source of an opinion on issues reserved to
the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §
404.1527(d)(3).

with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).   A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x  369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652

F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

### 1.   Social Worker Mol

Plaintiff argues that the ALJ should have given more weight to the opinions of Ms. Mol, his treating therapist.  On June 29, 2009, Ms. Mol completed a "Medical Assessment of Ability to do Work-Related Activities."  She offered an opinion that it would be extremely difficult for claimant to function in a work environment.  (A.R. 509, 587).  A social worker is not an "acceptable medical source."  *See* 20 C.F.R. §§ 404.1513(a), (d); *see also Payne v. Commissioner*, 402 F. App'x 109, 119 (6th Cir. 2010) ("[S]ocial workers are not acceptable medical sources under social security regulations.").  There is no "treating social worker rule," and the opinion of a social worker is not entitled to any particular weight.  *See Hayes v. Commissioner*, No. 1:09-cv-1107, 2011 WL 2633945, at * 6 (W.D. Mich. June 15, 2011) (collecting cases).  Only "acceptable medical sources" can:  (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule.  *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive

controlling weight because social workers do not qualify as 'acceptable medical sources.'"); *Turner v. Commissioner*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). The opinions of a social worker fall within the category of information provided by "other sources." *See* 20 C.F.R. § 404.1513(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1513, 416.913); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). This is not a demanding standard. It was easily met here. The ALJ found that the restrictions suggested by Ms. Mol were not supported by the objective medical evidence of record and plaintiff's daily activities. (A.R. 23-25).

### 2.  Psychiatrist Mitchell

Plaintiff argues that the ALJ should have given greater weight to Dr. Mitchell's January 2011 opinion that plaintiff was unable to perform any job at that time. (Plf. Brief at 20). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d at 390. A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d at 511; *Sims v. Commissioner*, 406 F. App'x at 980 n.1 ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").

The administrative record shows that Dr. Mitchell performed a psychiatric consultation on November 24, 2009. (A.R. 538-40). Plaintiff reported that his mood was "ok." (A.R. 538). He revealed that he had filed for bankruptcy in 2008. (A.R. 539). Plaintiff's affect was

euthymic and his thought processes were logical.  (A.R. 539).  Dr. Mitchell diagnosed plaintiff as bipolar II, primarily depressed.  He gave plaintiff a current GAF score of 60 and indicated that plaintiff's highest GAF in the past year was 70.  (A.R.540).  After this initial consultation, plaintiff continued to see Dr. Mitchell on a periodic basis.  On December 9, 2009, plaintiff described his mood as "good."  He reported "few" stressors.  He related that a typical day involved getting up around 10 a.m., taking his wife to work around 2 p.m., watching television, and going to sleep around 11 p.m. (A.R. 544).  On January 12, 2010, plaintiff reported increasing suicidal thoughts and that he had a plan to shoot himself.  He was "waiting for disability" and wanted to move out of his in-law's home.  Dr. Mitchell indicated that he would refer plaintiff for inpatient admission. (A.R. 543).  The ALJ observed that although Mitchell's progress notes suggested that plaintiff had been an inpatient for seven days, "the actual records from this admission were not made a part of this record."  (A.R. 20).  On January 26, 2010, plaintiff described his mood as "good" and he reported "limited" anxiety.  (A.R. 542).  On March 9, 2010, plaintiff reported that his mood was "pretty good" and that his medications had "balanced out."  He reported "few" stressors and that his anxiety was "limited."  (A.R. 541).  In March 2010, plaintiff went on a mission trip to Guatemala.  Plaintiff testified that he worked building homes and performing services at medical clinics and that he did not experience any episodes of anxiety.  (A.R. 54-55).  On April 6, 2010, Dr. Mitchell described plaintiff as "stable."  He revised his diagnosis from bipolar disorder to schizoaffective disorder, bipolar type.  (A.R. 663).  In May, June, and August 2010, Mitchell described plaintiff as euthymic. (A.R. 660-61).  On November 11, 2010, plaintiff was "stable."  (A.R. 658).  On January 13, 2011, Dr. Mitchell adjusted plaintiff's medications in response to his complaint of increased anxiety. (A.R. 657).  On January 20, 2011, Dr. Mitchell completed a RFC questionnaire.  He offered his opinion

that plaintiff had extreme or marked limitations in every category.  He stated, "I do not believe that [plaintiff] can perform any job at this time." (A.R. 653).  The ALJ found that the extreme restrictions that Dr. Mitchell had suggested in his RFC questionnaire responses were not supported by the objective medical record as a whole or claimant's activities of daily living, including his ability to travel to a foreign country and perform work without incident.  (A.R. 23).  I find no violation of the treating physician rule -- Dr. Mitchell's extreme restrictions are unsupported by his own records.

### 3.   Psychologists Mulder and Bechard

Plaintiff argues that the ALJ should have given more weight to Psychologist Mulder's opinions regarding plaintiff's RFC and a GAF score provided by Psychologist Bechard.  (Plf. Brief at 18).  It is not sufficient for plaintiff to point to "pieces of evidence" on which the ALJ could have based a finding in his favor.  His burden on appeal is much higher.  He must "demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence." *Peterson v. Commissioner*, 552 F. App'x 533, 540 (6th Cir. 2014).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534; *see Barnett v. Commissioner*, No. 13-4391, slip op. at 4-5 (6th Cir. July 22, 2014) ("We must accept the agency's factual finding when it is supported by substantial evidence, even when substantial evidence could justify a different result.").

Further, Psychologists Mulder and Dr. Bechard were consultative examiners, not treating physicians.  Mulder was hired by plaintiff's attorney and Bechard conducted his evaluation for the Michigan Disability Determination Service.  Because Mulder and Bechard were not treating physicians, the ALJ was not "under any special obligation to defer to [their] opinion[s] or to explain

why he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir.

2011); *see Peterson v. Commissioner*, 552 F. App'x at 539.    Nonetheless, the ALJ carefully

considered the opinions provided by these medical professionals.  (A.R. 21-25).

Psychologist Bechard performed his consultative examination on May 11, 2009.

(A.R. 481-84).  Plaintiff stated, "I can't work because I want to kill people I work with or myself."

(A.R. 481).  He reported being capable of performing all his daily activities by himself.  (A.R. 482).

He described a typical days as follows: "I get up whenever I feel like it; I get up and take my meds,

watching TV or playing of the Internet – mostly word games and go to bed whenever I feel like it.

I'm generally in my pajamas all day unless I have to go somewhere.  I try to take a walk three times

a week.  I live in an apartment with wife so we have no yard work to do. I do help around the

house[.]"  (A.R. 482).  Plaintiff's manners "were good, as was his hygiene."  (A.R. 482).  He was

oriented in all three spheres.  Plaintiff related that when he was not working, he did not argue as

much with his wife.  He added, "I would rather not work, [] especially if we have kids; then I can

be home for them."  (A.R. 484).  Psychologist Bechard offered a diagnosis of "Bipolar II, moderate

w/psychotic features and seasonal pattern" and a personality disorder, NOS with narcissistic,

obsessive-compulsive, and paranoid features.  He gave plaintiff a current GAF score of 50.  (A.R.

484).

Plaintiff's argument that the ALJ should have given more weight to this relatively low

GAF score is untenable.  GAF scores are not entitled to any particular weight.  *See Kornecky v.

Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory,

regulatory, or other authority requiring the ALJ to put stock in a GAF score[.]")  "GAF examinations

measure psychological, social, and occupational functioning on a continuum of mental-health status

from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment. *Id*. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning."[3] *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).

On March 26, 2010, Psychologist Mulder performed his consultative examination on a referral from plaintiff's attorney. (A.R. 545-50). Plaintiff reported that he had attempted suicide "forty-two times." (A.R. 545). He reported experiencing "extreme homicidal and suicidal thoughts" and stated that they were "work stress induced." (A.R. 546). He stated: "I would have no problem killing someone especially at work." (A.R. 548). Plaintiff took his medication as directed without supervision or assistance. (A.R. 546). He stated that his only current interest was watching television. (A.R. 547). He arrived on time for his appointment and had a driver's licence. (A.R. 547). He denied delusions, hallucinations, or obsessions. (A.R. 547). Psychologist Mulder offered

---

[3]"Significantly, the SSA has refused to endorse the use of the GAF scale[.]" *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006).

a diagnosis of bipolar II disorder, panic disorder without agoraphobia, antisocial and borderline personality traits. (A.R. 549-50). Mulder completed a RFC questionnaire for plaintiff's attorney (A.R. 551-53) and offered his opinion that plaintiff had been unable to work since his alleged onset of disability of June 15, 2008 and that he met the requirements of listing 12.04. (A.R. 550). Mulder later revised his opinion to indicate that plaintiff had been "unable to work since January of 2009." (A.R. 561, 639).

Mulder's opinions that plaintiff met the requirements of a listed impairment and was disabled were not entitled to any weight because those issues are reserved to the Commissioner. The ALJ determined that Mulder's opinion was entitled to little weight because the extreme functional restrictions that he suggested were not supported by the objective medical record as a whole or the claimant's daily activities. (A.R. 23). The ALJ is responsible for weighing conflicting medical opinions, not the court. *Buxton*, 246 F.3d at 775; *accord Barnett v. Commissioner*, No. 13-4391, slip op. at 4-5; *White v. Commissioner*, 572 F.3d at 284. The ALJ's decision to give little weight to Psychologist Mulder's opinions is well-supported and entirely consistent with applicable law.

**3.**

Plaintiff argues that the ALJ committed reversible error "by failing to follow the vocational expert's answers to accurate hypothetical questions" posed by plaintiff's attorney. (Plf. Brief at 17, 20). This argument does not provide a basis for disturbing the Commissioner's decision. Plaintiff's attorney's hypothetical questions gave full credibility to his client's testimony and assumed a RFC more restrictive than the one determined by the ALJ. RFC is an administrative finding of fact made by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), (3). Credibility determinations

-20-

concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). The ALJ's factual findings regarding plaintiff's RFC and the credibility of his testimony are supported by more than substantial evidence. (A.R. 20-25). The ALJ was not bound to accept the VE's testimony in response to the attorney's hypothetical questions, which incorporated more significant functional restrictions than those found by the ALJ. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010).

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  July 24, 2014           /s/  Joseph G. Scoville
                                United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).